Case number 21-7206 Gregory Smith Appellant versus District of Columbia, et al. Mr. Klaproth for the appellant, Mr. Patat for the appellees. Good morning, counsel. Mr. Klaproth, you can proceed when you're ready. Good morning. May it please the court, my name is Brendan Klaproth. I represent the plaintiff Appellant Gregory Smith. This is a civil rights case brought by Mr. Smith under Section 1983 in connection with an unlawful over-detention by the District of Columbia. On March 18, 2014, a judge in the D.C. Superior Court ordered that Mr. Smith be released from custody of the Department of Corrections. Rather than release Mr. Smith from custody as ordered, the Department of Corrections detained Mr. Smith for 23 days. The cause of Mr. Smith's over-detention was a computerized system used by the Department of Corrections called MyJustice. And the problem with MyJustice is that it had a one to two day delay in the system. Let me ask you, Mr. Klaproth, are you not relying on the failure of the order that was accompanying the marshal and Mr. Smith to be uploaded into TMS? Is that not part of your case? So it's not, and the reason why is to go back a little bit. During the course of discovery in this case, we requested TMS data for that order, which was not produced, and this resulted in a sanction to the District of Columbia. So we never received the data regarding the TMS. One other point about the TMS system is that the Rule 3... I'm sorry, but you do know that the order, I know there was a failure to produce it and there was a wrongheaded briefing on the summary judgment on the premise that the order didn't exist, and then the district ultimately found the order. But ultimately, as I gather, that order was logged into the system at 9.30 p.m. So you're not relying on that delay or the fact that... So if Mr. Jones was checking the system at whatever it was, 6 p.m., and that order didn't show up until 9.30 p.m., that's not part of your case at this point. You're focusing on the My Justice gap. That's correct, because when Mr... So just as a point of clarity, as far as we know, it could be an error from discovery that that information relating to that order was never uploaded at all into the TMS system. But what's at issue here is the fact that Mr. Jones processed the one order at approximately 6 o'clock, as Your Honor indicated, and as part of processing that, he was required then to check the My Justice system to see if there was any other detainers or orders that had been released in related cases. And the problem is that there was a one to two delay in the My Justice system. So Jack Jones testified at trial and also in deposition... I thought the inherent delay was an hour, one hour delay, and then there have been instances where there's been a delay of two days. That's correct. So in Exhibit P6, which was the policy statement for the Department of Corrections regarding releases, it indicates that there is a one to two day delay. And one of the witnesses did say that it was frequently an hour or so. The court didn't credit that apparently, because the finding, I believe, is that it was ordinarily... There's inherently a one hour delay. And of course, you have these instances in the past where not 23 days, but two days have passed. And it was not detained. Yes. And so the District of Columbia knew that though, and they memorialized that in their policy statement and document. And unfortunately, in this case, when Mr. Jones checked the release, which was issued earlier that day around 1.30 or 1.24 actually, I think, and then when he went to process the release at six o'clock, he testified that the order was not in the system. That if the order had been in the system, he would have seen it, but he didn't have any actual recollection of that day of that order. So he did testify that quite explicitly during trial that when he looked at the system, it was not in the order. The order was not in the system. And that's the evidence we have. And had the order been in the system, he even testified that he checks very closely because it's important. Had the order been in the system, he would have processed the release, Mr. Smith would have gone home. And so that is the causation of Mr. Smith's number of detention. And the issue we had here, the court found that there was a constitutional violation. The court found that the plaintiff proved the existence of a custom. The court found, however, that plaintiff failed to prove that the mine justice system was the cause of his over-detention. And the issue, the court misapplied the law when it came to causation. Specifically, the court erred by requiring that the plaintiff prove a pattern of prior constitutional violations caused by the mine justice system. And this is just not required. Essentially, that is the test for deliberate indifference under Baker's fourth prong, not the third prong where we were proceeding at trial. I agree that the district judge's holding is a little bit confusing on this point, but she does clearly state the standard and I think correctly state the standard around JA 543 to 544. She says, did the plaintiff also need to show deliberate indifference under prong three? All you have to prove is the policy is the cause. Official knowledge of existence of the practice, not knowledge of the results. In other words, not knowledge that there were a lot of similar over-detentions in the past and deliberate indifference to that pattern. So she seems to get that right. And then she says deliberate indifference is about the failure to train prong. So it is a little confusing why she then later focuses on the lack of a pattern. But do you agree that at least at that stage, she's correctly stating the distinction between the need for deliberate indifference on an omission case under Baker prong four, but that it isn't needed on a custom or practice claim under prong three? So yes, that's what's interesting about this case because the district of Columbia was arguing throughout trial and even here on appeal that under the third prong, you have to prove deliberate indifference, right? And so the district court did clarify, it was clear and correct in its of the law saying we did not need to prove deliberate indifference. However, in practice, in the application of the actual law to the facts of this case, the district court did on JA552, and again on JA564, go through and fault the plaintiff for not proving a pattern of prior constitutional over-detentions. And that's where the district court's decision ultimately came down. But she makes a lot of, she makes a sort of a series of alternative holdings. And at the end of the day, why isn't plaintiff's exhibit 14 fatal to your case? Exhibit 14 being the over-detention reports, I believe? No. Exhibit 14 is the my justice printout. And as the district judge points out, both orders appear there. And I think at a trial, she said it wasn't clear when that order was added to my justice, but then later in her ultimate conclusions of law, in an alternative holding, she seems to say that because both orders, the order from the 2012 case and the order from the 2014 case, both show up there with timestamps. And I'm looking, I think, at 559 of the JA, that that is fatal to the case. And I see the amount of time, but if I can answer your honors. Certainly. If you can continue our practices, that we'll use whatever time we need to ask questions and to give you a chance to answer them. Thank you, your honor. And so with respect to, I think the best analogy to use for my justice and court view dichotomy is it's almost like Pacer and Pacer monitor. All right. So we have court view, which is Pacer and it's uploading information immediately. And then you have this secondary system, which pulls the data later in the day. And so obviously when we printed out, we received in discovery during the course of litigation, the complete record from my justice, it contains the release order and reflects that it was received at approximately 124 by the department of corrections. However, Jack Jones testified. We showed him that that excerpt at trial showed him that precise excerpt and said, was this information in the system when you looked at it? He testified unequivocally. No, it was not. Um, what page is that? Mr. Clapworth for Jack Jones's testimony. Uh, so that would be, um, J a four Oh five through four Oh seven and four 13, four Oh five to Oh seven. And where's the five. Okay. Now what you looked at my, when you looked at my justice for Mr. Smith on March 18, 2014, did you see that he had been ordered released? No. If we could, could you turn the exhibit 14? Okay. The court. And how do you know now that you didn't see it then that's the court and the witness says from, this is just from general experience of working through justice. When you look, you read everything carefully just to make sure. And you double check before you completing the process and justice just to make sure. And I would have noticed it and caught it right. My second look, he never testified that it was there. Pardon me, that it was not there because he couldn't possibly recall that particular date in his work routine. And I'm quite sure that the findings of fact specifically at some point make clear that she judges rejecting that, uh, any, and your claim that Mr. Jones testified to that effect and, and saying, in fact, that he testified, uh, as we just heard now by Krong about the finding of the court, where is it? Well, if, if we also then look at J four seven, uh, line two, uh, question reads, okay. It then reads defendant is released in further status and set at defense requests. Did I read that correctly? Yes. Uh, question to be clear, you did not see that entry on March 18th, 2014, when you were processing the release in the 2014 case. Is that correct? That's correct. And I don't think it was credited because the prior testimony was only that that would have been a general practice. Um, so where in the findings do you have anything supportive of this? So, well, I mean, there's also evidence during his deposition, which was questioned when he was findings of the court, not the input, but the output. This is the evidence we have though. So I understand that when there's contrary evidence or the evidence is insufficient in the court's view that it's in the record is no longer material. The question is what were the findings and were they clearly erroneous? So, well, with respect to this, though, we have two or three instances, there's no contradictory evidence and there's no disputed fact. Um, and so, I mean, position, the contradictory evidence is out of the mouth of Mr. Jones. First, that would have been, he would have seen it if it were there. And then two pages later, yes to the question, did you see it? I mean, it wasn't there and he says, that's correct. He just pointed it to us 407, right? Which is contradictory to 405. Well, I think four or five is providing context about his general practice. I don't think it's contradictory. And during his deposition, the district of Columbia's lawyer questioned him, was this information there? Uh, no. And is, you know, then she followed up and asked, well, you know, can you explain why? And then he explained the delay in the system, how sometimes the system is not accurate. Um, so that's, that's the evidence. Um, and, you know, there's, there's nothing to the contrary to suggest that, you know, what I think an important point here too, is that the rule 30 B six witness for the that all staff members, uh, comply and process the order pursuant to the district of Columbia's policies and practices. So this isn't a case of staff error where we're trying to hold the district of Columbia liable for under respondeat superior case. This is a case about the failure of the process, not a failure by the person. Um, and I see I'm well beyond my time. So if the court has any other questions, I'm happy to, to address those. Uh, otherwise I'll yield my time to my colleague. Do, do my colleagues have further questions? We'll give you a couple of minutes. Oh, I'm sorry. Go ahead and rebuttal on the findings. If I could trace this down for we'll give you some time on rebuttal, Mr. Papa. Okay. Thank you. Yeah. And now we'll hear from thank you. Judge Pillar. Thank you. And may it please the court for the district of Columbia. This case concerns Mr. Smith's wrongful over-detention in the DC jail. Let's go to the argument. What did we know what a concern for you? You've heard what we're talking about. Yeah. Yes, your honor. And I think there are two primary reasons why his, his municipal liability claim, which is the only claim that's up on appeal fails. The first is that he did not prove that the policies he suggests were lacking where the cause in fact of his over-detention and second, whether framed as a knowing failure to act or see ability or deliberate indifference, Mr. Smith did not prove that the district should have known the policies he challenges would result in the error that led to his over-detention. And I'm happy to address each in turn. I think the most important being that, that, that Mr. Smith simply did not prove cause in fact at trial. Mr. Patak, is there any dispute that Mr. Smith would have been released? Had the release order in the 2012 case been seen and acted on as a result of Mr. Johnson's check of the my justice database? I don't think there's any dispute about that. Of course, if the department of existed, no matter how they found out about the release order, they of course would have processed the release order because nobody wants a person who's supposed to be released to be released. I'm a little puzzled by, by the district courts references to my just as justice, as not a system they relied on for release. That may be true, but I don't think, and I don't take you to be arguing that that defeats causation here. The fact that it was a, a further step that they should have had the order in hand in both the 2014 case and the 2012 case. And it was a bit of a fortuity that Mr. Jones was checking my justice at all, but given that he was, if if Mr. Claproth had proved that the time delay was a, was a cause here, then, then you would have to agree that that, that that would be sufficient. Well, so I just want to be clear about the timeline here. What, what we know is that the, the practice, so, so Mr. Jones gets the 2014 order and everybody agrees that that process seems to have gone correctly. And at that time, he says that he must have and he thinks apparently that my justice didn't show a release order in the 2012 case. But what we don't, and that of course is a testimony that district court judge, you know, did not really credit because it was based on a speculation about what he would have done. But what we don't know is that when the 2012 order came in to the department of corrections, which everybody And so the 2012 order came into the department of corrections. I thought there's a timestamp. That's 9 30 PM. There is your honor. Okay. And so at that, in other words, everybody agrees that the 2012 order came into the department of corrections and then was not processed. And there just was not evidence about why it was not processed, but it wasn't not processed because of any failure in my justice. And in fact, that's, that's the nub of it, isn't it? Go ahead. I think you're, I think you're right, but, but the truth of the matter is what, what may have may have been happening on my justice at, you know, six 30 that evening when the 2014 order was being processed. Isn't really what's at issue here. It's whether or not when the department of corrections should have processed the 2012 order, whether my justice had anything to do with the problem. Wait, wait, you're going to have to run that by me again. I'm not sure I followed the problem in this case is that everybody concedes that the 2012 order did show up at the department of corrections and was stamped at the records office, but then for whatever reason, it wasn't processed. And that failure to process the 2012 order was, had nothing to do with my justice was a later step in the process. So you're saying that the, even if it were proved decisively that the 2012 case order should have been promptly reflected in my justice, but was not reflected until let's say midnight that night. And Mr. Jones was checking my justice because he was processing the 2014 order. Are you now taking the position that the time delay in that scenario would not be a cause of Mr. Smith's over detention, because it doesn't matter what my justice showed when Mr. Jones was checking the 2014 order, all that would matter would be, were he checking a pursuant to the 2012 order? What it showed? Yes, because the process of the processing, a release order only happens when the department of corrections gets a release order. And in this case, that's an extraordinary position. And this is the first time I've heard that position, the cross check. I understand the district to require of my justice is to see whether when someone has a release order that's being processed, there are any other cases that require the individual to be held. And the only reason that he's held pursuant to the 2012 case is because on checking my justice. I mean, again, his position is that I'm checking my justice on the 2012 case. It erroneously failed to show that he had also been released on that case too. So I'm not really understanding your effort to somehow categorically render the status within my justice of the 2012 case to be irrelevant unless and until it's being checked pursuant to a TMS or other verification of the 2012 case itself. But maybe I'm misunderstanding your new position. Well, I think the reason it's irrelevant, and I agree with your honor that we are also, of course, making the argument that the question of what was going on on my justice throughout that day has just not been proven adequately at trial. However, I think the reason that it is irrelevant is because even if they had gotten the 2012 order at 930 at night, and even at that time, for some reason, my justice didn't reflect that same release order, the 2012 release order in the system at that late time, still the release would have been processed and the Department of Corrections records examiner would have simply contacted the court's quality assurance office and made sure that the order, the release order was, you know, in fact, legitimate. So the my justice, sorry. No, finish your thought. But the my justice system was simply an effort to check whether there were any other cases that merited a person continuing to be, you know, incarcerated. It was not the method by which release orders were transferred from the court to the Department of Corrections. The method by which release orders were transferred were either through the TMS system or on the last load envelope. And here, everybody agrees that the 2012 order was in the last load envelope and did arrive at the Department of Corrections. Do they? I mean, I thought there was some confusion about exactly how it got in that the district's position was that it's to this day not known actually how this order got to the Department of Corrections. And that was timestamp. And I think it's an inference you're drawing because of the time of day corresponds to a timely processing or timestamping after the last load. But I thought the district affirmatively said it did not know. Fair enough. I think it's an inference based on the timestamp. So I know this isn't the focus of Mr. Clapper's claim, but is there any question that Mr. Smith would have been released had the Department of Corrections refused to retain him without a March 18th recommitment order? I'm referring to the district judge was quite interested in the fact that typically a prisoner return or another commitment order on the day that the person returns from court is needed and that there wasn't one in this case. Had the district insisted on affirmative evidence that what the superior court judge intended was recommitment, that would have also triggered the quality assurance at least investigation or some further steps, no? I think that's probably right. You know, again, there is pretty scant evidence on that point, but I think that's probably a fair inference. But that, of course, is not the policy or custom that Mr. Smith is challenging in this case. He is not suggesting that there was some issue with those types of recommitment orders. So that isn't the policy that's the suggested Monell violation here. But I agree with you that that does seem to have been a failure here. There should have been that type of order to incarcerate him once more. And you're not standing on the notion that there is a requirement of deliberate indifference in a Baker prong three policy, I'm sorry, custom or practice case, are you? So I think what I would say in response to that is I think there are different ways to formulate the test here. And I agree that in Baker, the court only used the words deliberate indifference under when it was describing so-called prong four. But I think there is some level of culpability that a plaintiff does need to show in every municipal liability case. And the way that Baker framed it was a knowing failure to act. The way the district court framed it was foreseeability, which was an aspect of causation. But whatever it is, there does, I think, have to be some showing that the district was on notice about some prior pattern or reason to know that a particular policy would cause a constitutional violation. Mr. Prior pattern, why? I'm not sure I follow that. So I guess the policy says, let's say you had a policy where everyone knew that there was a two day delay in my justice. And I mean, just for fun, let's say a day delay in TMS and the instrument finding, you know, inadequate information, you wouldn't need to have any proof of any prior practice. It just stands to reason this is the policy and the policy caused this detention. No, I think that is correct. But I think that is the very rare and extreme case where purely on the face of a policy that doesn't itself that isn't itself unconstitutional, you know, it will result in unconstitutional outcomes. There is no question because it's built into the system that you're going to have a one or two day delay, and there's no way to get around it. So that actually is Mr. Claproth's case, I think he has this, this policy document that says, you know, don't don't, you know, beware, when you look at my justice, there's a one to two day delay. And then consistent testimony from Myrick and Brown and Jones saying, yeah, we, we saw that there was often a delay in my justice. So, so it's, it's not as stark facts. But I think that is the nature of his case. And if, if he could prove that there's no need for any prior cases of this very dysfunction, is there? Well, as a legal matter, I think there is. And that's for a couple reasons. First of all, that the, the way in which the Department of Corrections gets release orders here is not through my justice. So the one to two delay in my justice is not going to be the kind of situation where it's just obvious on the face of a policy that over detentions are going to occur, release orders show up through TMS or through the last load envelope. And those happen every day, you know, multiple release orders every single day, pass through that system. And there's no indication that it ever results in the situation which happened here, which is that an order shows up to the Department of Corrections, in whatever way is stamped by somebody in the records office, and then for some reason is not processed. And I, you know, that with regard to the the my justice two day delay, I think the other issue is, there has just not no, there has been no case offer, where that delay has caused an over detention, it just it just, you know, before this case, there is no example of that. And so I think that is a problem with Mr. Smith's culpability, with the culpability aspect of this case, I think, when the district is just not on notice that a particular policy is resulting in over detentions, where the policy is not on its face, obviously going to result in a constitutional violation, I think that is a problem. So it requires that there be two parallel charges, or two parallel cases being processed, because the only reason that Mr. Jones would have been checking my justice at all, given the absence of the order, hand delivery system working, is because he did have the order in the in the 2014 case, right. So the category would be limited to such a such a situation in which you had two orders, and somehow maybe they were mistaken as copies of the same order and not properly handled. But so so we're limited to that category, because otherwise, as you say, you wouldn't be looking in my justice. But in that category, is there not on the face of it, this exact risk? bracketing the question bracketing the question whether the proof shows it occurred here, seems to me that the district is a little bit on thin ice. Because could one show causation, I don't see a problem with the municipality being responsible for this custom or practice. No, Your Honor, because my justice was not what the district was relying on, in order to timely process release or no, but it was relying on it to determine whether somebody should still be held. And that was an error in this case. Right. But the error was the result of not failing to process an order that did admittedly show up to the Department of Correction. So the error is the error in the late delivery of the order in the late hand delivery of the order in the 20 or failure process or whatever of the 2012 order is a rationale or a justification here, as opposed to a further problem that simply hasn't been the focus? Well, it certainly was a problem, the failure to process also is a, it is a, it is, I suppose, a justification, it would be one word for it. In other words, it is the method by which orders are, are, are delivered and process, not my justice. And so it, you know, when something goes wrong, as it certainly did in this case, it is the it, the reason something went wrong is because that process of transmitting the order went wrong. Not because my justice had some sort of delay. It's both. I mean, it could be both. And again, assuming that there's proof that the delay was the problem here, equally causes no. Well, they're both but for causes. I agree with that, but I don't think they're equally causes. I think only one is the actual proximate cause of what happened in this case, because it is the method by which DOC is receiving orders. If there are no further questions, we would ask that you affirm. Thank you, Mr. Patak. Mr. Klaproth. Yes. So my colleague for the district really tried to drive home the point that my justice is not a method to receive release orders. But I think it's important to remind the court on summary judgment at document entry 83, page six through seven, the district wrote examiners are able to access release orders through an e-system known as my justice, which provides access to the information contained in the superior courts e-system court view. Thus misdemeans are processed by a system that does not rely upon the transport of a paper order to the jail for processing. So there on summary judgment, the district is saying we're using my justice and not relying on a paper system. So their position has changed here on appeal. And Mr. Jones testimony at trial really drove home the point, the method of how to receive a release order through my justice. You can download it directly or you can call quality assurance at the court to have a copy faxed over. I'm just referring to the summary judgment briefing that was in down below. And so you can download it directly. So tell us again exactly where you're looking. It's the district's summary judgment brief. Yeah, it's document entry 83. Okay. And it's at page six through seven where they made that representation. And then again, on joint appendix 400 to 401, where Mr. Jones describes the method of receiving a release order through my justice and that's downloading it directly through my justice or calling quality assurance to receive a release order. And it was also not in dispute. In fact, the district even conceded at trial that it was appropriate to receive release orders through fax from quality assurance. Whereas here they're stating on appeal, you can only receive them through TMS for the last load. Another point of clarification, just on the record, TMS, the rule 30B6 witness testified unequivocally that TMS is not a system to receive release orders, but instead a system to monitor staff. And the fact that there was a document in the queue, and I quote her, meant absolutely nothing to the corporate witness. And so that's what we were basing on. That was the evidence in the case. Counsel also referred to the language in Baker, knowing failure to suggest that plaintiff needed to prove the existence of prior over-detentions. That language in Baker is sites to the city of St. Louis v. Propotnick case. And that case by the Supreme Court has no mention or reference of a knowing failure or any sort of notice that is there's a body of case law where there is such as the Connick case that does require a pattern of prior constitutional violations, but those are all deliberate indifference cases. Now, one of the cases cited by the District of Columbia for that to advance that argument is a custom case. They're all deliberate indifference cases, including Blue, as well as Connick. Mr. Claprop, if a custom is not facially unconstitutional, then what showing do you have to make, though, to show that the city is culpable for the constitutional violation? I mean, where a custom itself is not unconstitutional. So, well, county of Bryan, the Supreme Court case from 1997 tells us when you have a situation such as here where the policy or the custom itself violates the law, then issues of culpability and causation are straightforward. And so I think when it comes down to moving force and showing that there is causation, we just apply the causation test, which is substantial. I think that, well, Jethro, you can follow up. I think you haven't quite answered her question. Right. I mean, what is unlawful precisely about the custom here on its face? I mean, it may have, obviously, in your view, led to an unconstitutional result, but the policy itself is not unconstitutional, or the custom itself is not unconstitutional. Well, and so I don't think it's necessary for us to prove that the custom itself is unconstitutional. I think it's just necessary that we prove that the custom or practice causes the constitutional violation. But in those instances, don't you also need to somehow show culpability for the city? Deliberate indifference. Right. And so, well, I'm sorry, I didn't hear Judge Ginsburg there. Deliberate indifference. Once you're in the world of the failure, it's not unconstitutional on its face, but it can produce these sport results, then you need to know that show that the district is aware of it and was deliberately indifferent to it. Yes, that's the test for the fourth prong, but here we're proceeding to the third prong. Right. And I think that the question is, does the custom or practice, if it is clearly the custom or practice of the municipality, and it causes the constitutional violation, is there any difference between the kind of causation or knowledge of the policy, of the practice that has to be shown between a practice that on its face is unconstitutional, we have a practice of hanging people up by their fingernails, or a practice that is not on its face unconstitutional, but that causes a we rely on a database with a known, you know, eight hour delay. Sometimes we check it within the eight hours. Sometimes we check it after. Is there a different standard of knowledge or culpability if the practice or custom is not manifestly on its own unconstitutional? I don't think it is. And I think the distinction with the level of culpability that differs is when a plaintiff is trying to hold the municipality responsible for the actions of an employee. Right. So like in deliberate indifference cases, you're trying to hold, whether it is a failure to screen case, a failure to train case, where an individual then goes and employee commits a tort or violates the rights of an individual and the plaintiff comes in and tries to hold the municipality. So deliberate indifference has that higher culpability level to guard against instances of respondeat superior. And so here, though, that's not an issue. There is no risk of respondeat superior. We're not trying we're not there's no evidence that any individual did anything wrong in this case. We're trying to hold the district accountable for its own policy that resulted in this constitutional violation. Mr. Claproth, the district court, I won't say admonished, but pointed out that you in your proposed findings of fact, we're taking testimony out of context. And I think you did it again this morning in the opening part of your argument, saying that Mr. Jones checked and saw no, no relevant order on March 18 2014. When the district court has made a finding that Jones has no present recollection of what my justice showed when he accessed it on March 18 2014. I think you have to be more careful going forward. That's advice. If I can just respond briefly, the court then further states and under finding a fact 59 Jones's testimony was less definitive. But when we looked at the joint appendix four or seven, my reading of it, it was quite definitive. testimony, I'm looking at the facts that were found by the court, don't you understand that once those facts are found, unless you want to argue they're clearly erroneous, which you have not even suggested. Those are the facts that we deal with. I was justified by one witness and not credited by the court. It's not that complicated. Unless the court has any further questions, I'm happy to yield. Thank you, counsel. Case is submitted.
judges: Pillard, Rao, Ginsburg